JOSEPH KIRN, Respondent, v. E. E. SOUTHER IRON·COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 9, 1909. Opinion filed January 4, 1910.

1. INSTRUCTIONS: Singling Out Facts. In an action against an iron company for injuries to plaintiff while employed in the construction of a building, one of the issues was whether the building was being constructed by the iron company or by a realty company organized by the same persons who owned and controlled the iron company, and there was evidence that before plaintiff's injury the officers and stockholders of the iron company determined to organize the realty company, but that the realty company was not incorporated until after a building permit had been issued for the building on which plaintiff was injured, the permit being taken out by the agent of the iron company. Held, an instruction that the realty company was not incorporated until a date specified, which was the date shown by the evidence as the date of the incorporation, was not objectionable as giving undue prominence to the date of the incorporation of the realty company.

2. EVIDENCE: Ownership of Premises. In an action for injuries to an employee while at work on a building, one of the issues was whether the building was being constructed by defendant iron company or by a realty company, which had been organized by the same persons, who were officers of the defendant iron company. There was evidence that the supervising architect of the building, on a date specified, in company with defendant's president, went to the assessor's office for the purpose of obtaining a permit to construct the proposed building. Held, that the application for a building permit by the supervising architect, which states he was the duly authorized agent for the defendant iron company, and the permit issued to the defendant iron company, were admissible in evidence.

3. MASTER AND SERVANT: Injuries to Servant: Case for Jury. In an action for injuries to an employee, the facts in connection with the accident being before the jury under correct instructions, it is *held* their finding thereon is conclusive as to the negligence of the master and as to whether defendant was erecting the building where plaintiff was injured.

4. ——: ——: Ownership of Premises: Case for Jury. In an action against an iron company for injuries to plaintiff while employed in the construction of a building, where one of the issues was whether the building was being constructed by the iron company or by a realty company, evidence that the stockholders and officers of the two companies were identical, that before the incorporation of the latter company plans for the construction of the building were made and a permit taken out in the name of the iron company; that the building was erected for the use of the iron company; that the realty company's capital stock was $10,000, while the cost of the building was $70,000; and that, while receipted bills showing who paid the great bulk of the cost of construction must have been in possession of the realty or iron company, they were not introduced in evidence, was sufficient to warrant a finding that the iron company was the owner of the building.

5. APPELLATE PRACTICE: Amount of Verdict: Conclusiveness. Where the amount of recovery, in a suit for personal injuries, has been sustained by the trial court in full, or a remittitur ordered, it will not be disturbed on appeal, except in a clear case of abuse of discretion.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Hickman P. Rodgers* for appellant.

(1) An instruction singling out and giving undue prominence to a particular fact is erroneous. Campbell v. Transit Co., 121 Mo. App. 406. (2) The application for the building permit was not shown to have been the act of defendant or its agent; therefore, said application and the permit issued thereon were erroneously admitted in evidence. (3) Defendant's peremptory instruction asked at the close of the case should have been given, because there was no evidence in the case that plaintiff was the servant of defendant. Bell v. Railway, 86 Mo.

612. (4) The verdict was so contrary to all the evidence that it must have been the result of passion or prejudice on the part of the jury. There was no substantial evidence that defendant was erecting the building where plaintiff was injured, or in any manner negligent. Berning v. Medart, 56 Mo. App. 443; Joy v. Cale, 124 Mo. App. 569. (5) The verdict is excessive in amount, even after remittitur.

*R. L. Shackelford, J. C. Kiskaddon* for respondent.

(1) The objection made by appellant's counsel to instruction No. 4, given at the instance of plaintiff, is not well taken, nor are the authorities cited by it applicable. It is not only the right, but the duty, of the court, if asked, to declare by instruction the legal effect of a written instrument introduced in evidence. The certificate of incorporation of the Woodruff Realty Company was introduced without objection on either side and in the instruction in question the court merely informed the jury of the legal effect of the instrument. Thomas v. Insurance Co., 47 Mo. App. 169; New Madrid Co. v. Phillips, 125 Mo. 61; Young v. Byrd, 124 Mo. 590; Brooks v. Insurance Co., 11 Mo. App. 350. (2) In all cases where the judge of the trial court is of opinion that the damages awarded by the jury are excessive, it is his duty to cause a remittitur to be entered, or grant a new trial. This the circuit court did in the case at bar. At the suggestion of the court, the remittitur was made, and a judgment was rendered for the balance. Where a remittitur is made reducing the verdict to a sum satisfactory to the trial judge, there is no ground for interference in an appellate court. Farnish v. Railroad, 102 Mo. 438; Loyd v. Railroad, 53 Mo. 509; Ice Co. v. Tamm, 90 Mo. App. 189; Nichols v. Plate Glass Co., 126 Mo. 55; Burdick v. Railroad, 125 Mo. 221; Smoot v. Kansas City, 194 Mo. 513. (3) Where there is any evidence from which a jury might legitimately infer the liability

of defendant, then the question ought to be submitted to the jury. Charles v. Patch, 87 Mo. 450; Workington v. Blell, 57 Mo. App. 410; Sandifer v. Lynn, 52 Mo. App. 553. (4) Where there is a dispute as to which of two persons is responsible for an act, and the evidence is conflicting, the question is properly submitted to a jury. Gayle v. Mo. C. and F. Co., 177 Mo. 427; Fink v. Furnace Co., 52 Mo. App. 553; Brannode v. Elmore, 114 Mo. 55. (5) The failure to introduce evidence peculiarly within the power of the party raises a presumption that if introduced it would be unfavorable to the party suppressing it. Bent v. Lewis, 88 Mo. 462; Insurance Co. v. Smith, 117 Mo. 261; Nelson v. Hole, 104 Mo. App. 466; Baird v. Given, 170 Mo. 302; Shields v. Hobart, 172 Mo. 491; Stephenson v. Kilpatrick, 166 Mo. 262. (6) The ownership of the property is not the question. The question is, who had the superintendence and control of the work. Phillips v. Railroad, 211 Mo. 419; Speed v. Railroad, 71 Mo. 303; Madden v. Railroad, 75 Mo. App. 358; McLaughlin v. Concordia College, 20 Mo. App. 42.

STATEMENT.—Action for damages for personal injuries. The petition avers that on the 10th of February, 1908, defendant was engaged in the erection of a building in St. Louis county, whereon plaintiff was employed by defendant to work as a mechanic, under the direction and command of a foreman, who was also employed as such foreman by defendant; that on the date above mentioned the foreman directed plaintiff to carry certain rolls of roofing paper to the roof, and in obedience to the order plaintiff took a roll and going to the roof, went onto a platform or scaffolding, which had been erected on the outside of the building and which was the ordinary and usual way of reaching the roof; that when the plaintiff stepped on the platform, the boards tilted and plaintiff was precipitated a great distance to the ground and injured; that the platform, before the accident, had been supported on several cleats and bars and that the

foreman of defendant under whom plaintiff was working, had shortly before the occurrence of the injury caused one of the cleats or bars to be removed; that plaintiff had no knowledge of this fact and that the platform tilted by reason of the absence of the supporting bar or cleat. It is charged that the removal of the cleat and leaving the platform in the condition it was, was actionable negligence on the part of defendant's employee.

The answer, after a general denial, was an averment of contributory negligence, as also a lack of knowledge on the part of the foreman that plaintiff intended using the scaffold, he having heretofore performed the same work without doing so.

The reply is a general denial.

At the trial before the court and jury, it appeared that in May, 1907, the officers and stockholders of the E. E. Souther Iron Company determined to organize a separate corporation to be known as the Woodruff Realty Company, which was to acquire title to ground and construct thereon factory buildings which when completed would be occupied by the iron company as tenant of the proposed realty company, and immediately began preparations to put that plan into operation. At that time Albert G. Souther was president of the iron company, Frank E. Codding, vice-president, and W. M. Scudder its secretary and treasurer. Mr. Codding was president of the realty company when it was organized, Mr. Souther vice-president, and Mr. Scudder secretary and treasurer. Owing to complications not explained by the record, the realty company was not incorporated until the 27th day of July, 1907, and on the 29th day of the same month, the ground upon which the building, in the erection of which plaintiff was injured, was conveyed to the realty company. In the meantime the erection of the building had been commenced, the supervising architect, Mr. McCormack, having entered into a contract as supervising contractor under which he was

to receive seven and one-half per cent of the cost of the building when erected. On the 9th of July, Mr. McCormack, in company with Mr. Souther, went to the assessor's office at Clayton for the purpose of obtaining a permit to construct the proposed building. The application was in writing and signed by Mr. McCormack and in part is as follows: "I, the undersigned Chas. B. McCormack, duly authorized agent for E. E. Souther Iron Company, hereby make application to the assessor of St. Louis county for a permit to build a brick and concrete building as designated below." It is stated in the application that the construction of the building is to be commenced July 9, 1907, to be completed January 1, 1908, estimated or actual cost $20,000, building to be occupied as a manufacturing plant, dimensions of building 230 by 260 feet and the extreme height of building to be 16 feet. The building permit, dated the same day, No. 33, in part, reads thus: "This is to certify that permission was granted this 9th day of July, 1907, to E. E. Souther Iron Company to build a brick and concrete building to be used for manufacturing plant." The application and the permit both describe the premises. When the application and the permit were first offered in evidence they were excluded by the court. Subsequently, on testimony being introduced tending to show that Mr. Souther was present in the assessor's office along with Mr. McCormack when the application was made and permit issued and accepted by Mr. McCormack, and that Mr. Souther had gone to the office of the assessor with Mr. McCormack when McCormack had gone there for the purpose of obtaining the permit, the court reconsidered its action and allowed the two papers to be read in evidence. It may as well be here noted that there was no evidence tending to show that either Souther or McCormack transacted any business at the office of the assessor, other than that McCormack applied for and took out this permit. It was in evidence that on the 20th of July, 1907, the pro-

moters of the realty company, who were all the stockholders and officers of the iron company, had taken out two casualty insurance policies, indemnifying them against liability for damages which might be incidentally suffered by workmen or other persons on or about the work of construction, and deeds conveying the property to the realty company were also introduced, all dated July 29, 1907, and recorded in the office of the recorder of deeds on the 20th of August, 1907. It was in evidence that the Banner Lumber Company had furnished practically all of the lumber for the building, which instead of the estimated cost of $20,000, it appears, ultimately cost $70,000, and defendant introduced a receipt from the lumber company acknowledging to have received $315.97 from the Woodruff Realty Company in full of all demands for lumber furnished McCormack in erecting the building referred to. Defendant also introduced a paper acknowledging the receipt' from the Woodruff Realty & Investment Company of $144.09, as a balance on account for grading. It also introduced a paper acknowledging the receipt by the superintending architect, McCormack, from the Woodruff Realty Company of $195 in full of all demands for construction of the building. The receipt of the grading contractor is dated July 21, 1907; the receipt of the Banner Lumber Company is dated June 5, 1908; the receipt of Mr. McCormack is dated August 13, 1908.

The petition in this case was filed April 4, 1908. These are all the receipts introduced, nor was there any other testimony other than these and the deeds and insurance policies introduced by defendant on the issue of ownership. There was no testimony introduced or offered apart from these, as to who had paid the balance of the $70,000, which it is in evidence was the cost of the improvement. On the part of plaintiff there was evidence from two or more of the workmen, to the effect that when they were paid for their labor, they were paid at different times, partly in cash and partly

in checks, upon which latter the name of the E. E. Souther Iron Company appeared, in what capacity, however, is not shown. There was evidence tending to support plaintiff's statement in the petition as to the happening of the accident and as to the extent of the injuries sustained and on part of defendant there was evidence tending to sustain the matter set up in the answer by the defendant which, if true, constituted contributory negligence. At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, defendant asked for an instruction for nonsuit, which being refused, defendant duly excepted.

At the instance of plaintiff the court gave five instructions. It is sufficient to state only such parts of them as relate to the matter in controversy. The first instruction, after instructing the jury that if they "believe from the evidence that on the 10th of February, 1908, plaintiff was employed by defendant to work under the direction and command of one James Ette, as foreman, and that said Ette was also employed by defendant as such foreman upon a building then being constructed," and correctly instructing the jury as to the substantive facts of the accident, necessary to be found, concludes with the direction that if the jury believed and found affirmatively on these matters, the verdict should be for plaintiff. The second instruction defines ordinary care. The third and fourth instructions are as follows:

"3. The jury in determining whether plaintiff was working for defendant or for the Woodruff Realty Company, at the time of his alleged injury, should take into consideration all of the facts and circumstances proven by the evidence in this case; including all the transactions between said McCormack and the officers of said two companies, of whatever nature or kind.

"4. The jury are instructed that the Woodruff Realty Company was not incorporated until the 27th day of July, 1907."

The fifth instruction was as to the measure of damages.

At the instance of defendant the court gave the following instruction:

"1. The court instructs the jury that a corporation is an artificial person created by law and having a legal existence separate from all other corporations or individuals. The jury is further instructed that the E. E. Souther Iron Company and the Woodruff Realty Company being distinct corporations, are two entirely different persons in contemplation of law, and this is in no wise altered by the fact that the stockholders and directors in both corporations may be the same. Therefore, if the jury shall find and believe from all the evidence that the building about which plaintiff was working at the time of his injuries was being erected for, and under contract with the Woodruff Realty Company, your verdict must be in favor of defendant."

As above stated, the court declined to give an instruction in the nature of a demurrer to the evidence. These were all the instructions given or asked.

The jury returned a verdict in favor of plaintiff for $2000. Pending a motion for new trial the court, as a condition to its being overruled, required plaintiff to remit $665 of the verdict. This was done and judgment entered for plaintiff in the sum of $1335. From this defendant has appealed, having duly filed its motion for a new trial and saved exceptions to the adverse rulings of the court.

REYNOLDS, P. J. (after stating the facts).— In the brief presented to us five points are urged for a reversal. The first is as to instruction No. 4. That is objected to on the ground that it singles out and gives undue prominence to a particular fact, that is to say, the date of the incorporation of the Woodruff Realty Company. It is a well-settled rule of practice in our State, that an instruction singling out and giving undue prominence to a fact is erroneous. We do not think that

applies to this instruction, under all the facts and the other instructions in the case.

The second assignment of error is to the admission in evidence of the application for and taking out of the building permit, which, it is insisted, is not shown to have been the act of the defendant or its authorized agent. We cannot sustain this assignment. There was evidence to connect the president of the defendant company, as such president, with making the application for and issuance of the permit, to entitle it to go to the jury along with other evidence in support of the contention of plaintiff that the work done by him was under the employment of an employee of this defendant. The papers on their face were in the name of the defendant. The facts attendant upon their execution were before the jury. The jury were properly instructed to cover this.

The third assignment of error is on the refusal of the court to give the peremptory instruction for nonsuit. Following what we have before stated, this assignment necessarily must fall. Reading all the testimony in the case, we are satisfied that there was substantial evidence entitling the plaintiff to go to the jury.

The fourth error assigned is that the verdict is so contrary to all the evidence that it must have been the result of passion or prejudice on the part of the jury; that there was no substantial evidence that the defendant was erecting the building where plaintiff was injured, or was in any manner negligent. We cannot agree to this assignment. The facts attendant upon the accident were before the jury; the evidence as to them was conflicting. The jury were correctly instructed concerning this phase of the case. Their finding on them is conclusive, as it is supported by substantial evidence. As to the issue of employment, as to who was the real employer, that was supported for plaintiff by substantial evidence. This case presents the not uncommon one of proving itself as much by what was not in evi-

dence as by what actually was in evidence before the jury. The realty company was incorporated with a capital stock of $10,000. The incorporators of that company were the stockholders of the iron company. The officers of the two companies were identical, titles only changing, the president of one being the vice-president of the other and *vice versa*. Before the incorporation of the company, plans were entered upon for the construction of this building and a permit taken out in the name of the iron company by the superintending contractor or builder, the man of all others who might be supposed to know his employer. The building was to be erected for the use of the defendant. Confessedly the building was to and did cost $70,000. The presumption is, in the absence of evidence to the contrary, that this was paid for by some one. Certainly the receipted bills which have been introduced in evidence by the defendant tend to show that, because all of them are for balances on account. Two of them are dated after the institution of this suit. By whom the great bulk of the $70,000 construction was paid is not in evidence and yet it must have been evidence not only accessible to but in the possession of the real parties in interest in this case, whether those parties were called E. E. Souther Iron Company or Woodruff Realty Company. The jury had a right, which undoubtedly they exercised, to assume that if these bills for over $60,000 had been paid by the realty company the production of the receipts would have been easy, and would show that fact. The failure to produce them is certainly a very strong and persuasive argument in support of the contention of plaintiff that the real owner and constructor of the building was the E. E. Souther Iron Company. Furthermore, it was before the jury as a fact in the case that the realty company, with $10,000 capital, was erecting a $70,000 building. That was a circumstance which the jury had a right to take into consideration in determining the question of the real ownership of the

property.  On consideration of the record in the case and of the testimony as abstracted by counsel, we conclude that this assignment should not be sustained.

The concluding assignment of error is that the verdict is excessive in amount, even after remittitur.  To sustain this assignment in this, as in all other cases of like character, where this point is made, requires this court to substitute its judgment for that of the jury as well as of the trial judge, in measuring the damages and in arriving at a correct estimate of them.  To do this, while clearly within our right (Chitty v. Railway Co., 148 Mo. 64), imposes a duty upon us that we are always reluctant to exercise.  If satisfied from the evidence in the case that a verdict is the result of prejudice or passion, it is the duty of the trial court not to rest at merely ordering a remittitur, but to set the entire verdict aside. When the question is presented of scaling it down, it is to be remembered that not only the jury but the trial judge heard the testimony, and saw the witnesses by whom it was given.  The opinion of each of them as to the damage sustained, when the case is submitted under proper instructions, is entitled to great consideration, and will only be disturbed by us in a clear case.  The trial court expresses his opinion on it, when he sustains it in full or orders a remittitur.  He acts, not alone within his great discretionary power, but with the great advantage that he has over this court.  Except in a clear case of abuse of discretion, this court will not undertake to interfere with the exercise of that discretion.  We cannot sustain this final assignment.

The judgment of the circuit court is affirmed.  All concur.